UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSE C. HOWARD, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:14-CV-1753-CAN |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On July 25, 2014, Plaintiff Jesse C. Howard, Jr. ("Howard") filed his complaint in this Court seeking reversal or remand of Defendant Acting Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB"). On November 11, 2014, Howard filed Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security. On February 17, 2015, the Commissioner filed a response requesting that the Court affirm the Commissioner's decision. Howard filed a reply brief on February 27, 2015. This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

**I.　RELEVANT BACKGROUND**

On July 11, 2011, Howard filed an application for Title II DIB with the Social Security Administration ("SSA") alleging disability beginning May 31, 2008. After the SSA denied Howard's application initially and upon reconsideration, an administrative law judge ("ALJ") held a hearing regarding Howard's application on March 4, 2013.

Howard was born on August 13, 1962, making him a forty-five-year-old male at the

alleged disability onset date. Howard completed an associates degree and was divorced with no children at the time of the hearing. Howard's work history following a 1986 motor vehicle accident is negligible. At his hearing before the ALJ, Howard alleged that he suffered from a seizure disorder, bursitis, depression, back and leg pain, and migraines. Howard provided the ALJ with medical evidence from 2008 to the date of the hearing in April 2012 that documented his medical treatment, including visits to his treating physician, Dr. David Eisenberg. The medical evidence and opinions show repeated visits and treatment for his seizure disorder, back pain, depression, and anxiety.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSA's regulations.[1] At Step One, the ALJ found that Howard had not engaged in substantial gainful activity since May 31, 2008, the alleged onset date. At Step Two, the ALJ found that Howard had the following severe impairments: seizure disorder, obesity, degenerative disc disease, depression, and multiple personality disorder. At Step Three, the ALJ found that Howard's impairments did not meet or medically equal the severity of a listed impairment. Before proceeding to Step Four, the ALJ determined that Howard had the residual functional capacity ("RFC") to perform light work, except that he:

> Is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. He is never to climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, and balance, stoop, and crouch. He can never kneel or crawl. He is able to remember, understand and carry out short,

---

[1] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

> simple and repetitive instructions and is able to sustain his
> attention and concentration for 2-hour periods and for an 8-hour
> workday on these instructions.  In addition, he is able to use his
> judgment in making work decisions related to short, simple and
> repetitive instructions.  He requires an occupation with set routine
> and procedures with a few changes during the workday and no
> fast-paced production work.  He is able to maintain his regular
> attendance and be punctual within customary tolerances and can
> perform activities within a schedule.  Lastly, he is to avoid all
> exposure to hazards, such as unprotected heights and dangerous
> machinery and is not to drive any vehicular equipment.

Doc. No. 10 at 18.

At Step Four, the ALJ found that Howard had no past relevant work.  At Step Five, the ALJ considered Howard's age, education, work experience, and RFC and determined that as of May 31, 2008, Howard was able to perform a significant number of jobs in the national economy, including cafeteria room attendant, housecleaner, and office helper.

Based on these findings, the ALJ determined in his written decision, issued on April 22, 2013, that Howard had not been under a disability from May 31, 2008.  Howard requested that the Appeals Council review the ALJ's decision, and on May 29, 2014, the Appeals Council denied review, making it the Commissioner's final decision.  *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

## II. ANALYSIS

### A. Issues Presented for Review

In his opening brief, Howard seeks reversal and remand of the ALJ's decision, arguing that: (1) the ALJ did not properly evaluate whether Howard's impairments met or medically equaled a listed impairment; (2) the ALJ improperly weighed medical opinion evidence; (3) the ALJ improperly assessed Howard's credibility; and (4) the ALJ failed to explain why he rejected

the limitations proposed by the State agency psychologist and the consultative examining psychologist.

A district court reviews the administrative record to determine whether the ALJ used the correct legal standards and the decision is supported by substantial evidence. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The reviewing court does not reconsider facts, re-weigh the evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). An ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion so that [the reviewing court] may assess the validity of the agency's final decision and afford [the claimant] meaningful review." *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quotations marks omitted).

> 1. <u>The ALJ adequately articulated his finding that Howard's impairments did not meet or medically equal a listing.</u>

At Step Three of his disability analysis, the ALJ found that Howard did not have an impairment or combination of impairments that met or medically equaled a listing. The ALJ indicated that he considered the listings, with particular attention to disorders of the spine (§ 1.04), convulsive epilepsy (§ 11.03), non-convulsive epilepsy (§11.03), affective disorders (§ 12.04), and personality disorders (§ 12.08). *See* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.04, 11.02-11.03. For each of the above listings, the ALJ discussed only the requirements of the listing that Howard failed to meet. The ALJ indicated that his determination was based on "medical evidence of record and the testimony at the hearing, both discussed in greater detail below [in the RFC determination] and incorporated herein by reference." Doc. No. 10 at 17. The ALJ noted that the State agency medical consultants found no listing was met or equaled but he did not discuss or analyze the other evidence that he relied on in making this determination,

4

beyond incorporating evidence discussed in his RFC analysis by reference.

Howard argues that the ALJ erred when he found that Howard's impairments did not meet or medically equal the listing for disorders of the spine, convulsive epilepsy, and non-convulsive epilepsy. Howard contends that the ALJ provided only a perfunctory discussion and provided no analysis, at Step Three or in his RFC determination, as to how the evidence supported his determination that Howard's impairments did not meet or equal a listing.

At Step Three of the sequential disability evaluation process, the ALJ must consider whether the claimant has an impairment that meets or equals a listings in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment equals a listed impairment, the claimant must be found disabled independent of age, education, and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of showing that an impairment satisfies all of the various criteria specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The ALJ must adequately articulate the bases for his conclusions. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). If the ALJ fails to reference the specific listing considered and conducts only a perfunctory analysis, a remand may be required. *Ribaudo*, 458 F.3d at 583. While the ALJ need not mention every piece of evidence in the record, the ALJ should consider evidence that may indicate that the claimant meets a listing in order to assure a reviewing court that the ALJ adequately considered the claimant's case. *Id.*

Howard primarily relies on *Ribaudo* and *Scott* to sustain his argument that the ALJ's analysis was perfunctory and requires a remand. However, this case is clearly distinguishable from *Ribaudo* and *Scott*. In those cases, the ALJ failed to even identify the listing the ALJ

5

considered and provided little or no evidence to support the determination. In *Ribaudo*, the sum total of the ALJ's Step Three determination was: "The claimant does not have an impairment which meets or equals the severity criteria of any impairment in the Listings. The Social Security Administration's non-examining experts...reviewed the evidence of record and opined that the claimant's condition did not medically equal any Listing." *Ribaudo*, 458 F.3d at 583. The ALJ's analysis in *Scott* was even more truncated. *Scott*, 297 F.3d at 595.

However, in this case, over the course of nearly two pages, the ALJ identified the specific listings Howard may have met, discussed the aspects of the listings that Howard failed to meet, and pointed out that the State agency medical consultants did not find that Howard met a listing. Furthermore, the ALJ incorporated by reference the robust medical evidence cited in his RFC determination. A discussion of the claimants impairments and medical evidence in an RFC determination "provides the necessary detail to review the ALJ's step 3 determination in a meaningful way" and will not be discounted "simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

Moreover, the ALJ considered some of the very evidence in support of Howard's claim that he met the listings for disorders of the spine, convulsive epilepsy, and non-convulsive epilepsy that Howard contends was not properly considered. For example, the ALJ considered Howard's October 2012 seizure while at his treating physician's office, an October 2011 MRI showing a disc bulge at the L1-L2, L2-L3, and L5-S1 levels, a positive bilateral straight leg raise, and a right foot drop. While Howard also claims that the ALJ's consideration of this evidence in determining the RFC is perfunctory because the ALJ does not explain how it impacted his Step Three analysis, the *Curvin* court held that it is not perfunctory but rather

6

"provides the necessary detail" for a meaningful review.

Therefore, this Court finds that the ALJ adequately articulated his Step Three analysis. The ALJ referenced the specific listings considered, provided a detailed description of the criteria required to meet those listings, and considered relevant evidence that could have suggested Howard met a listing. Based on the undersigned's review of the ALJ's Step Three analysis, this Court finds that ALJ adequately articulated his determination that Howard did not meet a listing.

> 2. The RFC is unsupported by substantial evidence because the ALJ failed to properly weigh the opinion of Howard's treating physician.

A treating source's opinion is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide a sound explanation for refusing to give controlling weight to a treating physician's opinion. *Id.*; *Roddy*, 705 F.3d at 636; *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must also adequately articulate his analysis so that a reviewing court can follow his reasoning. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

The ALJ is required by regulation to consider certain factors when deciding how much weight to give the treating physician's opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the physician's opinion was supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area. 20 C.F.R. § 404.1527(c)(2)-(5); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). When the

ALJ assigns less than controlling weight to the physician's opinion after considering these factors, a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quotations marks omitted). However, if the ALJ fails to address these factors in the opinion, a reviewing court cannot assess whether he assigned the proper weight to the treating physicians' opinions. *Scrogham*, 765 F.3d at 697; *Larson*, 615 F.3d at 751.

In this case, the ALJ recognized that Dr. Eisenberg was Howard's treating psychologist, however the ALJ gave Dr. Eisenberg's opinion "little weight" in making his RFC finding. Doc. No. 10 at 23. Dr. Eisenberg treated Howard on nine occasions between October 11, 2011, and August 25, 2012. Dr. Eisenberg opined that he considered Howard "severely impaired in terms of work related activities in respect to his overall signs and symptoms of depression and memory loss." Doc. No. 10 at 324. Dr. Eisenberg further opined that Howard was unable to meet the competitive standards required to complete a normal workday without interruptions from psychologically-based symptoms. Finally, Dr. Eisenberg opined that Howard's impairments or treatment would cause him to miss more than four days of work per month on average.

When the ALJ presented his RFC as a hypothetical question to the Vocational Expert ("VE"), the VE testified that Howard could perform jobs available in significant numbers in the national economy, such as cafeteria room attendant, housecleaner, and office helper. However, when the ALJ incorporated Dr. Eisenberg's opinion into the hypothetical, asking the VE whether an individual who could not maintain regular attendance, be punctual within customary tolerances, and perform activities within a schedule, the VE testified that there were no jobs that

a person with those limitations could perform.

The ALJ indicated that he gave little weight to Dr. Eisenberg's opinion because "it is inconsistent with the record." Doc. No. 10 at 23. Specifically, the ALJ found that Howard's ability to live by himself, perform at drag shows, and write several books "is evidence that he would be able to meet the competitive standards when dealing with the stresses of work and could complete a normal workday and workweek without interruptions." *Id.*

The ALJ stated in his opinion that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527." Doc. No. 10 at 18. However, the ALJ failed to discuss the section 404.1527 factors in his opinion. While the regulations require only that the ALJ consider the regulatory factors, case law requires that the ALJ at least minimally articulate his rationale, give a sound explanation for the weight assigned to the treating physician's opinion, and include at least a nominal discussion of the regulatory factors. *See Scrogham*, 765 F.3d at 697-98*; Larson*, 615 F.3d at 751. Such a discussion would have constituted a "logical bridge" from the evidence to the ALJ's conclusion, allowing this reviewing Court to assess the validity of the agency's final decision and afford Howard a meaningful review. *See Giles*, 483 F.3d at 487.

The Commissioner cites *Henke v. Astrue*, arguing that the ALJ need not explicitly weigh every factor while discussing a decision on the weight to give a treating physician. 498 F. App'x 636, 640 n.3 (7th Cir. 2012). While case law does not demand a thorough discussion of each factor or even a discussion including all of the factors, it does require that the ALJ minimally articulate his rationale for the weight given to a treating physician based on the factors laid out in the regulations. *Scrogham*, 765 F.3d at 697-98*; Larson*, 615 F.3d at 751.

9

"The opinions of treating physicians are generally entitled to greater weight than those of examining physicians, and opinions of examining physicians are entitled to greater weight than those of non-examining physicians." *Wolf v. Colvin*, 2013 WL 3777200, at *10 (N.D. Ind. July 18, 2013) (citing 20 C.F.R. § 416.927(c)(1)-(2)). Therefore, this Court expects a sound explanation for the weight assigned to the medical opinions in a case such as this, in which Howard's treating psychologist's opinion was given little weight while the opinion of a consulting State agency psychologist, who simply completed a check-box-style form, was given great weight.

The ALJ may have had a sound explanation for the weight he gave Dr. Eisenberg's medical opinion, including an analysis of how the § 404.1527 factors weighed against Dr. Eisenberg's opinion. However, he did not minimally articulate such a sound explanation, thus failing to provide the logical bridge necessary for this Court, with no medical expertise, to meaningfully review the weight given to the medical opinions. Therefore, the Court finds that the ALJ's weighing of Dr. Eisenberg's medical opinion was not supported by substantial evidence and this matter requires remand so that the ALJ may properly weigh Dr. Eisenberg's medical opinion.

        3.       The ALJ's credibility assessment

When a claimant's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. SSR 96-7p; *see also Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). Because an ALJ is in a special position to hear, see, and assess witnesses, the ALJ's credibility determinations are given special

deference and will only be overturned if they are patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). However, this Court must "examine whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413.

In this case, the ALJ found Howard's allegations regarding the severity of his impairments not fully credible based on Howard's activities of daily living; his high level of social functioning; the minimal amount of seizure activity in the record; the conservative treatment record related to his back and knee impairments; and Howard's continued smoking and failure to lose weight, despite physicians' recommendations. Because this case is already being remanded, an extensive review of each aspect of the ALJ's credibility finding is not warranted. Examining just two, the ALJ's reliance on Howard's activities of daily living and his continued smoking despite physicians' recommendations that he quit, indicate that the credibility determination also requires review on remand.

First, an ALJ should use caution when basing a credibility determination on reports of activities of daily living because "there are critical differences between activities of daily living and activities in a full-time job," such as increased flexibility, no minimum standards of performance, and no punitive action for absences. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Courts have "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639. Here, the ALJ did not discuss any limitations Howard may have in performing his activities of daily living or whether his approach to these activities would be acceptable in a competitive work environment.

Second, a claimant's failure to quit smoking is not a reasonable basis for an unfavorable

11

credibility finding. *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Therefore, the ALJ's finding that Howard continued smoking despite several physicians recommending that he stop is an improper basis for a negative credibility finding.

The Court need not reach any conclusions as to whether these flaws alone in the ALJ's credibility determination render it patently wrong because the case is already being remanded. Nevertheless, on remand, the ALJ should take the opportunity to review the credibility determination and express a reasoned and supported determination based on the proper regulatory factors. *See Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991) ("If an issue is left open after remand, the lower tribunal is free to decide it.").

### 4. The ALJ's consideration of social functioning and memory limitations recommended by psychologists

An ALJ may not only selectively consider medical opinions or "address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Rather, the ALJ must consider all relevant evidence. *Id.* The ALJ's opinion need "not contain a complete written evaluation of every piece of evidence...but when the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ not ignore these opinions and must explain the weight given to the opinions in their decisions." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (internal quotation marks omitted); *see also* S.S.R. 96–6p; 20 C.F.R. § 404.1527(e)(2)(i).

In completing a functional capacity assessment, State agency reviewing consultant psychologist Dr. Lovko opined that Howard's symptoms "may result in some impediment to work situations which involve large numbers of people; but it does appear that [Howard] would be able to handle settings where there are fewer other persons in the work setting." Doc. No. 10

at 333. State agency examining consultant psychologist Dr. Nancy H. Link opined that Howard was "severely impaired in terms of work related activities" due to his depression and immediate memory loss. Doc. No. 10 at 323-24.

However, the ALJ failed to address Dr. Lovko's opinion that Howard's ability to work could be impeded by large crowds or Dr. Link's opinion that immediate memory loss severely impaired Howard's ability to work. Furthermore, the did not include any social functioning or immediate memory limitations in his RFC. The ALJ's failure to at least address Dr. Lovko's opinion is all the more striking because the ALJ gave his opinion "great weight."

The ALJ is required by case law and the SSA's rules to address a material medical opinion and explain the weight given to it. *See Myles*, 582 F.3d at 678; *see also McKinzey*, 641 F.3d at 891. The ALJ erred when he failed to explain his rationale in ignoring Dr. Lovko's opinion that Howard should be limited to a work environment with fewer co-workers. Similarly, the ALJ erred by not addressing Dr. Link's opinion that Howard's immediate memory loss impaired his ability to work.

However, an ALJ's error in failing to explain his treatment of Dr. Lovko's and Dr. Link's medical opinions does not require a remand unless the error was material, meaning the Court is convinced that the ALJ may have reached a different result if he had considered the opinions. *See McKinzey*, 641 F.3d at 892. Because this case is already being remanded, the Court need not reach any conclusions as to whether these errors were material. Nevertheless, on remand the ALJ should take the opportunity to review the treatment of Dr. Lovko's opinion regarding Howard's social functioning limitations and Dr. Link's opinion regarding Howard's immediate memory limitations. *See Key*, 925 F.2d at 1061 ("If an issue is left open after remand, the lower

13

tribunal is free to decide it.").

## III. CONCLUSION

For the reasons stated above, the Court finds that (1) the ALJ adequately articulated his Step Three analysis; (2) the ALJ's weighing of Dr. Eisenberg's medical opinion was not supported by substantial evidence; (3) faulty approaches to activities of daily living and smoking in the ALJ's credibility determination warrant further consideration on remand; and (4) the ALJ's error in failing to explain his treatment of Dr. Lovko's and Dr. Link's medical opinions should be addressed on remand. Therefore, the Court now **GRANTS** Howard's request to remand this case. [Doc. No. 13]. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated this 16th day of July, 2015.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge